# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

RASHAD WEARING                                                    PETITIONER
Reg. #11018-084

V.                              NO. 2:13CV00163-JLH-JTR

ANTHONY HAYNES, Warden,                               RESPONDENT
FCI-Forrest City

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following Proposed Findings and Recommended Disposition ("Recommendation") have been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (b) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Background

Pending before the Court is a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus filed by Petitioner, Rashad Wearing ("Wearing"),[1] an inmate in the Federal Correctional Institution in Forrest City, Arkansas. *Doc. 1*. In his Petition, Wearing

---

[1] Some records identify him as "Rashadi" Wearing.

attacks the calculation of his sentence by the Bureau of Prisons ("BOP"). Before addressing Wearing's claim, the Court will review the complex procedural history of the case in state and federal court.

On September 25, 2001, Wearing was convicted of credit card fraud, in Virginia state court, and sentenced to five years of imprisonment, with all but one year suspended. On June 6, 2003, he was convicted of violating his probation and received a one-year "active sentence," followed by probation. On November 11, 2003, he was again released to probation supervision. *Doc. 9-1, at 7.*[2]

On October 12, 2004, Wearing was arrested by Virginia state authorities for being a felon in possession of a firearm. At the time of his arrest, he had a pending state charge for violating his probation. *Id. at 7-8; Doc. 2, at 7.*

On October 27, 2004, Wearing was convicted of the state probation violation and received a sentence of three years and eleven months, with all but one year suspended. *Doc. 9-1, at 7, 10; Doc. 2 at 7.*

On December 8, 2004, while Wearing was incarcerated in a Virginia state prison serving the state sentence for violating his probation, a federal grand jury in the Western District of Virginia returned an indictment charging him with conspiring to distribute cocaine base. *United States v. Wearing*, W.D. Va. No. 3:04CR00092-8-

---

[2]These facts are contained in the sworn declaration of James D. Crook, supervisory attorney at the BOP's Consolidated Legal Center. *Doc. 9-1.*

NKM, *doc. 3*. The indictment identified the federal "offense date" as December 8, 2004. *Id.*

On December 29, 2004, pursuant to a writ of habeas corpus *ad prosequendum*, Wearing appeared in the United States District Court for the Western District of Virginia for his plea and arraignment. The same day: (1) the court entered an Order of Detention Pending Trial; and (2) Wearing was transferred from state custody to federal custody. Thereafter, he was held as a federal pretrial detainee in the Central Virginia Regional Jail ("CVRJ") in Orange, Virginia.[3] *Id., docs. 57 & 61; Doc. 9-1, at 12-13* (USMS tracking records); *see Doc. 1, at 4-5; Doc. 2, at 1-2, 7 & 9.*

On January 27, 2005, the state firearms charge was *nolle prossed. Doc. 9-1, at 8; Doc. 2, at 7.*

On July 20, 2005, while Wearing remained a federal pretrial detainee in the CVRJ, awaiting trial on the federal charge, he satisfied his one year state sentence for violating his probation. *Doc. 9-1, at 13 & 16; Doc. 19-2; Doc. 2 at 7.*

On August 8, 2005, Wearing entered a guilty plea on the federal charge of conspiracy to distribute cocaine base. *United States v. Wearing, supra*, *doc. 172*. On June 27, 2006, judgment was imposed and he was sentenced to 262 months of imprisonment in the BOP. *Doc. 9-1, at 18-19.*

---

[3]According to the CVRJ website, the facility houses local, state and federal prisoners. *See* www.cvrj.org/history.

On June 23, 2008, the federal sentencing court issued an order reducing Wearing's sentence to 210 months, based on new sentencing guidelines for offenses involving crack cocaine. *Id. at 25.* On October 12, 2011, the federal sentencing court issued an order further reducing Wearing's sentence to 168 months based on the amended guidelines. *Id. at 27.*

The BOP calculated Wearing's 168-month federal sentence as commencing on the date it was imposed, June 27, 2006. The BOP also gave Wearing credit for 341 days of "jail" time from July 21, 2005 (the day after he satisfied his state sentence) to June 26, 2006 (the day before his federal sentence commenced). Based on this calculation, the BOP projected Wearing's release date to be December 22, 2017. *Id. at 29-30.*

In this § 2241 action, Wearing argues that the BOP also should have credited his federal sentence with the period between the date he became a federal pretrial detainee on December 29, 2004, through July 20, 2005, the date he satisfied his state sentence. Thus, Wearing claims he is entitled to approximately seven months of additional jail time credit on his federal sentence. *See Docs. 1, 2 & 12.*

Respondent has filed a Response, and provided supplemental information to support the BOP's calculation of Wearing's sentence. *Docs. 9 & 19.*

For the reasons discussed below, the Court recommends that Wearing's § 2241

Petition be denied.

## II. Discussion

The calculation of a federal sentence is governed by 18 U.S.C. § 3585(a) and (b), which: (1) define when a federal sentence "commences"; and (2) then establish when a defendant is entitled to credit for time "spent in official detention prior to the date the sentence commences."

### A.    Commencement of Federal Sentence

Under § 3585(a), a defendant's federal sentence "commences" when he "is received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served." Importantly, a federal sentence generally commences "when the United States takes *primary jurisdiction* and a prisoner is presented to serve his federal sentence, not when the United States merely takes physical custody of a prisoner who is subject to another sovereign's primary jurisdiction." *Elwell v. Fisher*, 716 F.3d 477, 481 (8th Cir. 2013) (emphasis added).

In this case, the State of Virginia took physical custody of Wearing, on October 12, 2004, thereby assuming primary jurisdiction over him.[4] Wearing unquestionably became a federal pretrial detainee, on December 29, 2004, pursuant to an Order of Detention entered after his plea and arraignment on federal drug charges. However,

---

[4]"As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person." *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005).

the State of Virginia *still maintained primary jurisdiction over him*, as evidenced by Wearing's receiving credit on his state sentence for the time he spent in federal custody.[5]

When a prisoner is in state custody, serving a state sentence, and is transferred to the physical custody of federal authorities, pursuant to a writ of habeas corpus *ad prosequendum*, he remains subject to the state's "primary jurisdiction" and is temporarily "on loan" to federal authorities for purposes of his federal prosecution. *Elwell*, 716 F.3d at 482; *Cole*, 416 F.3d at 896-97.[6] Thus, Wearing remained in the "primary" custody of the State of Virginia through July 20, 2005 (the date he satisfied his state sentence), even though he became a federal pretrial detainee on December 29, 2004. Finally, there is *nothing* in the record to suggest that the State of Virginia ever took any action to relinquish primary jurisdiction over Wearing prior to the expiration of his state sentence on July 20, 2005.[7]

Under BOP policy, the earliest date a federal sentence can "commence" is the

---

[5]"Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: (1) release on bail, (2) dismissal of charges, (3) parole, or (4) expiration of sentence." *Elwell*, 716 F.3d at 481 (quoting *Cole*, 416 F.3d at 897).

[6]This is so even when the prisoner remains in federal custody after the entry of an Order of Detention. *See Davis v. Sneizek*, 403 F. App'x 738, 740-41 (3d Cir. 2010); *Richardson v. Outlaw*, 2011 WL 671997, at *1 n.5 (E.D. Ark. Feb. 17, 2011).

[7]*See Cole*, 416 F.3d at 897 ("Primary jurisdiction continues until the first sovereign relinquishes its priority in some way.").

date it is imposed. *See Sisemore v. Outlaw*, 363 F. App'x 424, 424-25 (8th Cir. 2010); *Coloma v. Holder*, 445 F.3d 1282, 1283-84 (11th Cir. 2006); BOP Program Statement 5880.28, ch. 1, p. 13 ("In no case can a federal sentence commence earlier than the date on which it is imposed."). Here, the BOP determined that Wearing's federal sentence commenced on June 27, 2006, the day it was imposed, and the earliest possible date that it could commence.

Wearing contends that the federal sentencing judge intended his federal sentence to begin on December 28, 2004, based on a presentence investigation report which stated he had been "in federal custody" since that date. *Doc. 9, at 6; Doc. 12, at 4-6*. "Only the BOP has the authority to determine when a federal sentence commences." *United States v. Hayes*, 535 F.3d 907, 910 (8th Cir. 2008). "While nothing prevents the sentencing judge from making recommendations to the BOP, the determination of the commencement date and the designation of the place at which the sentence is to be served remains with the BOP." *Id.*; *see United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006) (district court's determination of starting date for time in state custody, based on information in PSI report, was "irrelevant" because BOP "is responsible for computing the sentence credit after the defendant has begun serving his sentence").

Finally, Wearing contends that his state and federal sentences ran

"concurrently" between December 29, 2004 and July 20, 2005. *Doc. 2, at 3*. Because his federal sentence was not imposed until June 27, 2006 – almost one year after he completed his state sentence – this contention also is without merit. *See Cole*, 416 F.3 at 898 n.3 (concurrent service of federal and state sentences "was not an option at the time of resentencing because by then Cole had already completed his state sentence").

Thus, the BOP correctly determined that Wearing's federal sentence "commenced" on June 27, 2006. Thus, the only way any time served before that date can arguably be counted toward his federal sentence is if he is entitled to "prior custody credit."

### B.    Prior Custody Credit

A defendant is entitled to credit on his federal sentence for any time spent in official detention prior to the date his federal sentence commences *if* the detention: (1) was the "result of the offense for which the [federal] sentence was imposed," 18 U.S.C. § 3585(b)(1); or (2) was the result of a "charge for which the defendant was arrested after the commission of the offense for which the [federal] sentence was imposed," *id.* § 3585(b)(2). However, such time may only be credited against the federal sentence if it has *not* already been credited against a state sentence. *Id.*

In calculating Wearing's federal sentence, the BOP gave him "prior custody credit" for the 341 days that had *not* been credited to his state sentence, for the period

from July 21, 2005 to June 26, 2006. Wearing contends that he is also entitled to federal credit from December 29, 2004 to July 20, 2005, *even though all of that time was credited against his state sentence for violating his probation*. Wearing's argument is contrary to well-established federal case law, and the explicit language of 18 U.S.C. § 3585(b).

First, because Wearing was in the "primary" custody of the State of Virginia, between December 29, 2004 and July 20, 2005, he is not entitled to have any of this period credited to his federal sentence. *See Davis*, 403 F. App'x at 740-41 (defendant was not entitled to credit against his federal sentence, under § 3585(b), for time in federal custody pursuant to a writ *ad prosequendum* because he remained in state's "primary jurisdiction" until it "extinguished by operation of law ... when his state sentence expired"); *Phillips v. Hufford*, 2014 WL 3871195, at 2 (S.D.N.Y. Aug. 6, 2014) (prisoner not entitled to § 3585(b) credit for time served before imposition of his federal sentence when he was exclusively in state custody).

BOP policy is consistent with the "primary jurisdiction" doctrine, and expressly states that time spent in federal custody, pursuant to a writ of habeas corpus *ad prosequendum* issued because the prisoner is in state custody, "will not in and of itself be considered for the purpose of crediting presentence time." BOP Program Statement 5880.28, ch. 1, p. 20B. The policy further states: "The primary reason for 'writ'

custody is not the federal charge. The federal court merely 'borrows' the prisoner under the provisions of the writ for secondary custody." *Id.*

Second, Wearing's argument that he is entitled to federal credit for the approximately seven months the State of Virginia credited against his state sentence (from December 29, 2004, the date he first became a federal pretrial detainee, to July 20, 2005, the date he satisfied his state sentence), is in *direct conflict with* "the express bar on double credit found in 18 U.S.C. § 3585(b)."[8] *Elwell*, 716 F.3d at 484; *see United States v. Wilson*, 503 U.S. 329, 337 (1992) (in enacting § 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time").

Finally, Wearing's federal detention, between December 29, 2004 and July 20, 2005, does *not* fit under either provision of § 3585(b). While Wearing was detained and placed in federal custody on December 29, 2004, he remained subject to the State

---

[8]While the records from the BOP and the State of Virginia confirm that Wearing was given credit on his state sentence for the period from December 29, 2004 *to July 15, 2005*, there is a discrepancy regarding whether his state sentence was credited with the five days of detention from July 16, 2005 to July 20, 2005. *See Doc. 2, at 7* (BOP records stating that, according to state officials: (1) Wearing "satisfied [his] state sentence" on July 20, 2005; (2) his state sentence was credited with time spent in custody "from October 12, 2004, through July 15, 2005"; and (3) "the credit [he was] seeking was awarded toward [his] state sentence"); *Doc. 9-1, at 16* (BOP records stating that, according to state officials, "jail credit" was applied to Wearing's state sentence from October 12, 2004 to July 15, 2005, and he was "released" on July 20, 2005); *Doc. 9-1, at 29* (BOP records showing that credit was applied to Wearing's federal sentence beginning July 21, 2005); *Doc. 9-1, at 10 & Doc. 19-2, at 1-2* (Virginia records stating that Wearing had a "Custody Responsibility Date" of July 15, 2005, and was "released" from the Virginia Department of Corrections to the USMS detainer on July 20, 2005).

Because Wearing clearly is *not* entitled to credit for the full period from December 29, 2004 to July 20, 2005, the Court need not resolve the discrepancy regarding this five-day period from July 16, 2005, to July 20, 2005.

-10-

of Virginia's "primary jurisdiction" on the sentence he was serving for violating his state probation, and he received day-for-day credit on that state sentence. Thus, his federal detention prior to July 20, 2005 was *not* the "result of the federal offense [drug trafficking] for which [Wearing's] federal sentence was [later] imposed," as required by § 3585(b)(1). *See* BOP Program Statement 5880.28 ch. 1, p.16 (§ 3585(b)(1) credit will be given for official detention "as a direct result of the federal offense for which the federal sentence was imposed").

Similarly, Wearing does not qualify for a federal sentencing credit under § 3585(b)(2) because, at the latest, he was arrested for the state probation violation on October 12, 2004. This was several months *before* he committed the federal drug trafficking offense for which he was charged on December 8, 2004. Thus, his detention, from December 29, 2004 to July 20, 2005, was not the result of a "charge for which [Wearing] was arrested *after* the commission of the [drug trafficking] offense for which the [federal] sentence was imposed," as required by § 3585(b)(2). *See id.* at ch. 1, p. 21 (§ 3585(b)(2) credit will be given for official detention as a result of any "arrest which is not related to, yet occurred on or after the date of the federal offense ... for which the [federal] sentence was imposed").

Accordingly, the BOP properly denied Wearing's request for prior custody credit for the period from December 29, 2004 to July 20, 2005.

-11-

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT this 28 U.S.C. § 2241 Petition

for a Writ of Habeas Corpus, *Doc. 1*, be DENIED, and that this case be dismissed,

with prejudice.

DATED this 28th day of April, 2015.

_____

UNITED STATES MAGISTRATE JUDGE