# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

RASHAD WEARING                                                                  PETITIONER
Reg. #11018-084

V.                              NO. 2:13CV00163-JLH-JTR

ANTHONY HAYNES, Warden,                                                         RESPONDENT
FCI-Forrest City

## PROPOSED FINDINGS
## AND SUPPLEMENTAL RECOMMENDED DISPOSITION

## INSTRUCTIONS

This Proposed Findings and Supplemental Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### I. Background

On December 9, 2013, Petitioner, Rashad Wearing ("Wearing"), initiated this § 2241 action. In his habeas Petition, he argued that the Bureau of Prisons ("BOP") failed to credit his federal sentence with approximately seven months of "prior

custody" time from December 29, 2004 to July 20, 2005. *See Docs. 1, 2 & 12.*

Respondent Haynes, in his Response, argued that the BOP had properly calculated *all* "prior custody credit" that Wearing was entitled to receive on his federal sentence and that the approximately seven months in question could *not* be credited toward his federal sentence because *all* of that time had been credited toward Wearing's state sentence. *Doc. 9.*

The Recommended Disposition, dated April 28, 2015, suggested that this habeas claim should be dismissed, with prejudice, because it lacked merit.[1] *Doc. 31.* However, in reaching that conclusion, this Court acknowledged a potential problem in the record:

> While the records from the BOP and the State of Virginia confirm that Wearing was given credit on his state sentence for the period from December 29, 2004 *to July 15, 2005*, there is a discrepancy regarding whether his state sentence was credited with the five days of detention from July 16, 2005 to July 20, 2005. *See Doc. 2, at 7* (BOP records stating that, according to state officials: (1) Wearing "satisfied [his] state sentence" on July 20, 2005; (2) his state sentence was credited with time spent in custody "from October 12, 2004, through July 15, 2005"; and (3) "the credit [he was] seeking was awarded toward [his] state sentence"); *Doc. 9-1, at 16* (BOP records stating that, according to state officials, "jail credit" was applied to Wearing's state sentence from October 12, 2004 to July 15, 2005, and he was "released" on July 20,

---

[1] In the April 28, 2015 Recommended Disposition, the Court set forth a detailed analysis of: (1) Wearing's arrests, convictions, and sentences for violating his Virginia probation and for engaging in a federal conspiracy to distribute cocaine base; (2) his "custodial status" throughout the relevant time period; and (3) how his "prior custody" was credited toward either his Virginia state sentence or his federal sentence. *Doc. 31 at 2-4.*

2005); *Doc. 9-1, at 29* (BOP records showing that credit was applied to Wearing's federal sentence beginning July 21, 2005); *Doc. 9-1, at 10 & Doc. 19-2, at 1-2* (Virginia records stating that Wearing had a "Custody Responsibility Date" of July 15, 2005, and was "released" from the Virginia Department of Corrections to the USMS detainer on July 20, 2005).

*Id. at 10 n.8.* Notwithstanding the noted five-day "discrepancy," this Court concluded that, because the record "generally suggested" that Wearing's state sentence had been properly credited with *all* of his prior custody time, between December 29, 2004, and July 20, 2005, it "need not resolve the discrepancy regarding the five-day period from July 16, 2005, to July 20, 2005."[2]

On May 19, 2015, United States District Judge J. Leon Holmes adopted the Recommended Disposition and entered a Judgment dismissing Petitioner Wearing's § 2241 action, with prejudice. *Docs. 34 & 35*.

On October 22, 2015, the Eighth Circuit Court of Appeals: (1) vacated the May

---

[2]On November 4, 2014, this Court ordered Respondent to file a supplemental pleading, along with supporting documentation, explaining whether the period of Wearing's detention from July 16, 2005 through July 20, 2005, was credited toward his state or federal sentence. *Doc. 16*. On November 14, 2014, Respondent filed a "Response to the Court's Order," with an attached letter, dated November 10, 2014, from J. Tiede, Central Criminal Records, Virginia Department of Corrections. *Doc. 19*. In that letter, Mr. Tiede stated that Wearing's "Custody Responsibility Date (CRD)" was July 15, 2005, and he was "release[d]" on July 20, 2005 "to his U.S. Marshal's Detainer." *Doc. 19-2*. While Mr. Tiede's letter seemed to *suggest* that the five days in question (July 16, 2005 to July 20, 2005) had been credited against Wearing's state sentence for violating his probation, it did *not* explicitly state those facts in a direct and understandable way. In hindsight, this letter did *not* provide a sufficient foundation to resolve that issue and this Court should *not* have so easily dismissed that point in its Recommended Disposition.

19, 2015 Order and Judgment; and (2) directed the district court to resolve the following issue: Did the Virginia Department of Corrections ("VDC") credit Wearing's state sentence for violating his probation with the five days between July 16 and July 20, 2005? *Doc. 45*.[3]

On November 17, 2015, this Court ordered Respondent to file a properly supported Response that *established with precision* the answer to that question. *Doc. 48*.

On December 15, 2015, Respondent filed a "Response to Court Order," along with a supporting Affidavit from James D. Crook, Supervisory Attorney for the BOP. *Doc. 54*. In his Affidavit, Mr. Crook stated the following:

> On November 9, 2015, I received a letter from the Virginia Department of Corrections. In their correspondence, they verified that the appellant, Rashadi Andre Wearing, had received credit for the time period in question. *See* Attachment A, VaDOC Letter. The time in question was credited towards the appellant's state sentence. *Id.*

*Doc. 54-1 ¶ 5*. The letter Mr. Crook referenced is dated November 9, 2015, and is signed by Cheryl Clements, Central Criminal Record Manager for the VDC. *Id. at 3*.

Before reviewing the content of Ms. Clements's letter, it is important to understand Wearing's custodial status between October 12, 2004, the date of his initial

---

[3]Under well-established federal law, if those five days were credited toward Wearing's state sentence, he is *not* entitled to have those days credited toward his federal sentence. *See* 18 U.S.C. § 3585(b); *United States v. Wilson*, 503 U.S. 329, 337 (1992); *Elwell v. Fisher*, 716 F.3d 477, 484 (8th Cir. 2013).

arrest on state charges, and July 20, 2005, the date he completed serving his one-year state sentence for violating his probation.

On November 11, 2003, Wearing was placed on probation, after being convicted on state charges in Virginia. *Doc. 9-1 at 7*.

On October 12, 2004, Wearing was arrested by Virginia state authorities on the charge of being a felon in possession of a firearm. At the time of his arrest, he had a pending charge for violating his state probation. *Id. at 7-8; Doc. 2 at 7*.[4] According to Wearing, after his October 12 arrest, he was jailed in the Albemarle-Charlottesville Joint Security Complex. *Doc. 2 at 2, 4*.

On October 27, 2004, Wearing was convicted of violating his Virginia probation and received a three-year-and-eleven-month sentence; *however, all except one year of that sentence was suspended. Doc. 9-1 at 7, 10; Doc. 2 at 7*. From October 27, 2004, until late December of 2004, it appears Wearing remained in the Albemarle-Charlottesville Joint Security Complex, *as a state prisoner*, serving his one-year state sentence for violating his probation. *See Doc. 1 at 5; Doc. 2 at 2, 4, 9; Doc. 12 at 3*.

On December 8, 2004, a federal grand jury, in the Western District of Virginia, indicted Wearing for conspiring to distribute cocaine base. *United States v. Wearing*,

---

[4]On and after being incarcerated on October 12, 2004, Wearing was under the "primary jurisdiction" of the State of Virginia. Thereafter, he remained under state "primary jurisdiction" until July 20, 2005, the date he completed serving a one-year sentence for violating his probation.

W.D. Va. No. 3:04CR00092-8, *doc. 3*. On December 29, 2004, the United States Marshals Service ("USMS") used a writ of habeas corpus *ad prosequendum* to "borrow" Wearing from state custody and take him to federal court for his plea and arraignment. After that proceeding, the United States Magistrate Judge entered an Order of Detention and the USMS transported Wearing to the Central Virginia Regional Jail ("CVRJ"), a state regional facility that houses local, state, and federal prisoners.[5] *Id., docs. 57 & 61; Doc. 9-1 at 12-13*.

After his December 29 plea and arraignment, Wearing's incarceration status was that of a state prisoner, serving his one-year state sentence, *and* a federal pretrial detainee. However, this dual custodial status did *not* alter the fact that the State of Virginia continued to exercise "primary jurisdiction" over him. *See Elwell v. Fisher*, 716 F.3d 477, 481-82 (8th Cir. 2013); *United States v. Cole*, 416 F.3d 894, 896-97 (8th Cir. 2005).

On January 27, 2005, the State of Virginia *nolle prossed* the October 12, 2004 felon in possession of a firearm charge against Wearing. *Doc. 9-1 at 8; Doc. 2 at 7*. Thereafter, the only charges pending against Wearing were the federal drug charges.

On July 20, 2005, Wearing completed serving his one-year sentence for

---

[5]*See* www.cvrj.org (accessed Jan. 28, 2016). It appears Wearing remained in the CVRJ from December 29, 2004 through the date he was transported to the BOP, in October or November 2006, to begin serving his federal sentence. *Doc. 9-1 at 13*.

violating his probation. On that same day, the USMS released its writ of habeas corpus *ad prosequendum*. *Doc. 9-1 at 13*. Immediately thereafter, the VDC provided Wearing with a written "Notification" that he was being released from the CVRJ "to your U.S. Marshal's Services detainer." *Doc. 19-2 at 2*. Because he had completed serving his one-year state sentence on July 20, 2005, the USMS acquired federal "primary jurisdiction" over Wearing on that date.

On August 8, 2005, Wearing entered a guilty plea to the charge of conspiracy to distribute cocaine base. *United States v. Wearing, supra, doc. 172*. On June 27, 2006, he was sentenced to 262 months of imprisonment in the BOP, and later transferred from the CVRJ to the BOP. *Doc. 9-1 at 13, 18-19*.

On June 23, 2008, the federal sentencing court issued an order reducing Wearing's sentence to 210 months, based on new sentencing guidelines for offenses involving crack cocaine. *Id. at 25*. On October 12, 2011, the federal sentencing court issued an order further reducing Wearing's sentence to 168 months based on the amended guidelines. *Id. at 27*.

The BOP calculated Wearing's 168-month federal sentence as commencing on June 27, 2006, the date it was imposed. The BOP also gave Wearing 341 days of "jail credit," from July 21, 2005 (the day after he satisfied his state sentence) to June 26, 2006 (the day before his federal sentence commenced). Based on this calculation, the

BOP projected Wearing's release date to be December 22, 2017. *Id. at 29-30.*

In Ms. Clements's November 9, 2015 letter, she states that the VDC credited Wearing's one-year state sentence for violating his probation with two periods of "prior custody credit": (1) October 12, 2004 [the date of Wearing's initial arrest by state authorities on the charge of being a felon in possession of a firearm] to July 15, 2005;[6] *and* (2) the five days between "07/15/2005" and "07/20/2005" [the date Wearing completed serving his one-year state sentence for violating his probation].[7] The Court concludes that Ms. Clements's letter establishes that the VDC credited Wearing's state sentence with *all* of the time between October 12, 2004 and July 15, 2005, plus the last five days (July 16 to July 20, 2005) that he served in the CVRJ before he fully "discharged" his one-year sentence for violating his state probation.

On December 23, 2015, the Court entered an Order giving Wearing until and including January 22, 2016, to file a Reply to Respondent's "Response to Court

---

[6]Ms. Clements's letter also states that the VDC credited Wearing's state sentence with the time he was in custody between March 8, 2004 and April 19, 2004. In his habeas Petition, Wearing does *not* argue that he is entitled to *any credit* on his federal sentence for this interval of time. Of course, because that time was credited against Wearing's state sentence, it could *not*, as a matter of law, be credited against his federal sentence. Finally, this earlier interval of time is *not* relevant to the narrow issue that is before this Court on remand: Did Wearing receive credit on his state sentence for the five days he was incarcerated, from July 16 to July 20, 2005?

[7]Ms. Clements's letter refers to these five days as VDC "Custody Responsibility" credit. While she provides no explanation of why these five days were considered to be "Custody Responsibility" credit, rather than "Applied Jail Credit," Ms. Clements's letter makes it clear that Wearing's one-year state sentence was credited with *all* of the time between: (1) October 12, 2004 and July 15, 2005; *and* (2) July 15 and July 20, 2005.

Order." *Doc. 55*. To date, Wearing has not filed a Reply.[8]

For the reasons discussed below, the Court recommends that Wearing's § 2241 Petition be denied.

## II. Discussion

The calculation of a federal sentence is governed by 18 U.S.C. § 3585(a) and (b). Together, these two subparts of the statute determine when a federal sentence "commences" and when a defendant is entitled to credit for time "spent in official detention prior to the date the sentence commences," *i.e.*, prior custody credit.

### A. Commencement of Federal Sentence

Under § 3585(a), a defendant's federal sentence "commences" when he "is received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served." Importantly, a federal sentence generally commences "when the United States takes *primary jurisdiction* and a prisoner is presented to serve

---

[8]Shortly after Wearing's case was remanded from the Eighth Circuit, this Court learned from the Clerk of Court that mail sent to Wearing, at his last known address at FCI-Forrest City, was being returned "undeliverable." *See Docs. 46, 51 & 53*. The Court accessed the BOP website and discovered that Wearing had been transferred to FCI Beaumont. On December 2, 2015, this Court directed the Clerk to mail to Wearing, at his new address at FCI Beaumont, the Court's November 17, 2015 Order directing Respondent to provide documentation regarding the five days in question. *Docs. 48 & 52*. On December 23, 2015, this Court directed the Clerk to mail the following documents to Wearing at his new address: (1) Respondent's December 15, 2015 "Response to Court Order"; and (2) the Court's December 23, 2015, Order directing Wearing to file a Reply. *Docs. 54 & 55. None* of those documents, sent to Wearing at his new address in Beaumont, were returned to the Court.

his federal sentence, *not* when the United States merely takes physical custody of a prisoner who is subject to another sovereign's primary jurisdiction." *Elwell*, 716 F.3d at 481 (emphasis added).

In this case, the State of Virginia took physical custody of Wearing, on October 12, 2004, and assumed "primary jurisdiction" over him.[9] On December 29, 2004, the USMS "borrowed" Wearing from the State of Virginia, pursuant to a writ of habeas corpus *ad prosequendum*, and transported him to the United States District Court for the Western District of Virginia for his plea and arraignment on federal drug charges. Thereafter, Wearing was detained, pursuant to an Order of Detention. However, the State of Virginia *still maintained primary jurisdiction over him*.[10] This explains why the State of Virginia credited Wearing's one-year state sentence, imposed on October 27, 2004, with *all* of the time he spent in federal custody, as a pretrial detainee, from December 29, 2004 to July 20, 2005.[11]

---

[9] "As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person." *Cole*, 416 F.3d at 897.

[10] "Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: (1) release on bail, (2) dismissal of charges, (3) parole, or (4) expiration of sentence." *Elwell*, 716 F.3d at 481 (quoting *Cole*, 416 F.3d at 897).

[11] When a prisoner is in state custody, serving a state sentence, and is transferred to the physical custody of federal authorities, pursuant to a writ of habeas corpus *ad prosequendum*, he remains subject to the state's "primary jurisdiction" and is temporarily "on loan" to federal authorities for purposes of his federal prosecution. *Elwell*, 716 F.3d at 482; *Cole*, 416 F.3d at 896-97. This is so even when the prisoner remains in federal custody after the entry of an Order of Detention. *See Davis v. Sneizek*, 403 F. App'x 738, 740-41 (3d Cir. 2010); *Richardson v.*

Under BOP policy, the earliest date a federal sentence can "commence" is the date it is imposed. *See Sisemore v. Outlaw*, 363 F. App'x 424, 424-25 (8th Cir. 2010); *Coloma v. Holder*, 445 F.3d 1282, 1283-84 (11th Cir. 2006); BOP Program Statement 5880.28, ch. 1, p. 13 ("In no case can a federal sentence commence earlier than the date on which it is imposed."). Here, the BOP determined that Wearing's federal sentence commenced on June 27, 2006, the day it was imposed by the sentencing judge, and *the earliest possible date that it could commence*.

Wearing contends that the sentencing judge intended his federal sentence to begin on December 28, 2004, based on a presentence report which stated he had been "in federal custody" since that date. *Doc. 9 at 6; Doc. 12 at 4-6*. "Only the BOP has the authority to determine when a federal sentence commences." *United States v. Hayes*, 535 F.3d 907, 910 (8th Cir. 2008). "While nothing prevents the sentencing judge from making recommendations to the BOP, the determination of the commencement date and the designation of the place at which the sentence is to be served remains with the BOP." *Id.*; *see United States v. Tindall*, 455 F.3d 885, 888

---

*Outlaw*, 2011 WL 671997, at *1 n.5 (E.D. Ark. Feb. 17, 2011). Thus, Wearing remained in the "primary" custody of the State of Virginia through July 20, 2005 (the date his state sentence "expired"), even though, on and after December 29, 2004, he was both a state prisoner serving his one-year sentence for violating probation *and* a federal pretrial detainee. Nothing in the record suggests that the State of Virginia took any action to relinquish primary jurisdiction over Wearing prior to the expiration of his state sentence on July 20, 2005. *See Cole*, 416 F.3d at 897 ("Primary jurisdiction continues until the first sovereign relinquishes its priority in some way.").

(8th Cir. 2006) (district court's determination of starting date for time in state custody, based on information in presentence report, was "irrelevant" because BOP "is responsible for computing the sentence credit after the defendant has begun serving his sentence").

Finally, Wearing contends that, between December 29, 2004 and July 20, 2005, his state and federal sentences ran "concurrently." *Doc. 2 at 3*. Because his federal sentence was not imposed until June 27, 2006 – *almost one year after he completed his state sentence* – this contention is without merit. *See Cole*, 416 F.3d at 898 n.3 (concurrent service of federal and state sentences "was not an option at the time of resentencing because by then Cole had already completed his state sentence").

Because the BOP correctly determined that Wearing's federal sentence "commenced" on June 27, 2006, the only way any time *before* that date could be counted toward that sentence would be if he was entitled to "prior custody credit."

### B. Prior Custody Credit

A defendant is entitled to credit on his federal sentence for any time spent in official detention prior to the date his federal sentence commences *if* the detention: (1) was the "result of the offense for which the [federal] sentence was imposed," 18 U.S.C. § 3585(b)(1); or (2) was the result of a "charge for which the defendant was arrested after the commission of the offense for which the [federal] sentence was

imposed," *id.* § 3585(b)(2). However, such time may only be credited against the federal sentence if it has not already been credited against a state sentence. *Id.*

In calculating Wearing's federal sentence, the BOP properly gave him "prior custody credit" for the 341 days he was in custody from July 21, 2005 [the day after he completed serving his state sentence for violating probation] to June 26, 2006 [the day before his federal sentence was imposed]. Wearing contends that he is also entitled to federal credit from December 29, 2004 to July 20, 2005, *even though all of that time was credited against his state sentence for violating his probation*. Wearing's argument is contrary to well-established federal case law, and the explicit language of 18 U.S.C. § 3585(b).

First, between December 29, 2004 and July 20, 2005, Wearing was in the "primary custody" of the State of Virginia. Accordingly, he is not entitled to have any of those days credited toward his federal sentence. *See Davis*, 403 F. App'x at 740-41 (defendant was not entitled to credit against his federal sentence, under § 3585(b), for time in federal custody pursuant to a writ *ad prosequendum* because he remained in state's "primary jurisdiction" until it "extinguished by operation of law ... when his state sentence expired"); *Phillips v. Hufford*, 2014 WL 3871195, at 2 (S.D.N.Y. Aug. 6, 2014) (prisoner not entitled to § 3585(b) credit for time served before imposition of his federal sentence when he was exclusively in state custody).

Consistent with the doctrine of "primary jurisdiction," BOP policy expressly states that time spent in federal custody, pursuant to a federal writ of habeas corpus *ad prosequendum*, "will not in and of itself be considered for the purpose of crediting presentence time." BOP Program Statement 5880.28, ch. 1, p. 20B. The policy further states: "The primary reason for 'writ' custody is not the federal charge. The federal court merely 'borrows' the prisoner under the provisions of the writ for secondary custody." *Id.*

Second, Wearing's argument that he is entitled to federal credit for the approximately seven months the State of Virginia credited against his state sentence (from December 29, 2004, the date he first became a federal pretrial detainee, to July 20, 2005, the date he satisfied his state sentence), is in *direct conflict with* "the express bar on double credit found in 18 U.S.C. § 3585(b)." *Elwell*, 716 F.3d at 484; *see United States v. Wilson*, 503 U.S. 329, 337 (1992) (in enacting § 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time").

The BOP has provided the Court with Ms. Clements's November 9, 2015 letter, which establishes that the VDC gave Wearing credit on his one-year state sentence for the period of time: (1) from December 29, 2004 to July 15, 2005; *and* (2) July 16, 2005 through July 20, 2005, the five days that still remain in question and that caused the Eighth Circuit to remand this case for further consideration. Accordingly, the BOP

properly denied *all* of Wearing's requests for prior custody credit, including the five days between July 16, 2005 and July 20, 2005.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT this 28 U.S.C. § 2241 Petition for a Writ of Habeas Corpus, *Doc. 1*, be DENIED, and that this case be dismissed, with prejudice.

DATED this 29th day of January, 2016.

_____
UNITED STATES MAGISTRATE JUDGE